## LACNY v. ALEXANDER.

1. FRAUD—MORTGAGES—SUSPICIONS SUFFICIENT TO PUT ONE ON INQUIRY.

If the circumstances surrounding the making of a mortgage are sufficient to raise some doubt in the mortgagee's mind as to the validity of the mortgagor's title, and to cause him not to be satisfied without an investigation and he fail to investigate, he must be charged with a knowledge of the facts he would have learned if he had done so, and it is immaterial that the facts sufficient to put him on inquiry did not come from a documentary source.

2. SAME—MORTGAGEE CHARGED WITH KNOWLEDGE OF FACTS HE WOULD HAVE LEARNED BY INVESTIGATING.

Where a mortgagor had secured a deed and contract to the property in question by fraud, and by his great haste to put the mortgage through raised the suspicions of the mortgagee, who, instead of investigating, when he would have learned the facts, required a sworn statement of the mortgagor that he was the owner and the furnishing of additional security, the mortgagee is not a good-faith mortgagee, but is chargeable with knowledge of the facts he would have learned by investigating.

3. LIS PENDENS—NOTICE TO PURCHASER OF PENDING SUIT INVOLVING FRAUD.

Where a suit for the cancellation of a deed and the assignment of a land contract on the ground of fraud was pending and notice of lis pendens had been filed at the time the property was sold at a suspiciously low price, the purchaser was not an innocent purchaser for value and acquired no title to the property; filing of lis pendens being notice to him of what was involved in the suit.

Appeal from Wayne; Collingwood (Charles B.), J., presiding. Submitted January 12, 1927. (Docket No. 89.) Decided April 1, 1927.

[1]Fraud, 26 C. J. § 68; [2]Id., 26 C. J. § 60; [3]Lis Pendens, 38 C. J. §§ 88, 93.

Bill by John Lacny against Lionel Alexander, Harry Weisberg, Louis Muscovitz and others for the cancellation of certain deeds and the assignments of a land contract on the ground of fraud. From the decree rendered, plaintiff and defendants Weisberg and Muscovitz appeal. Reversed, and decree entered for plaintiff.

*Stanley C. Pietraszewski* and *Chester Pietraszewski,* for plaintiff.

*Welsh, Bebout & Lee,* for defendant Muscovitz.

McDONALD, J. Alleging fraud, this bill was filed for the cancellation of three warranty deeds and assignments of a land contract. On May 13, 1925, the plaintiff owned a four-family dwelling house in the city of Detroit, Michigan. He had contracted to sell the property to defendants Alex Mayor and Julia Mayor, his wife. At the time in question there was an unpaid balance of $4,226.82 on the contract. He wanted to dispose of his interest and went to the office of the defendant Alexander for that purpose. Alexander told him that his vendor's interest in the contract was not worth more than $2,900. He agreed to take that amount. He understood that Alexander would sell it for him. Alexander gave him a receipt for the abstract, contract, and deed, and later asked him to sign some papers that were "necessary." He signed, and it afterwards appeared that in so doing he had executed a warranty deed and an assignment of the land contract to Alexander. He is unable to read or write English, and claims that he did not know that he was signing a deed and an assignment of his contract to Alexander. He received no consideration whatever. On the same day Alexander took the deed and the assignment of the contract to defendant Weisberg, from whom he had bought a diamond ring for

$850, on which he had made a cash deposit of $50. To secure the payment of the balance within ten days, he assigned the contract to Weisberg and gave him a warranty deed of the property. After demand upon Alexander to restore to him his property, the plaintiff began this suit, and at the same time filed a notice of *lis pendens.* Subsequently, Weisberg, by assignment of the contract and warranty deed, conveyed to defendant Louis Muscovitz for a consideration of $2,000. On the hearing the circuit judge found that the assignment of the contract and the warranty deed had been procured from the plaintiff by Alexander through fraud; that Weisberg was a good-faith mortgagee for value, but should pay to the plaintiff the surplus received from the foreclosure of his mortgage, amounting to $1,125. He found the title of the property to be in Muscovitz, but decreed that the plaintiff should have a lien on it to secure the payment of the $1,125. From this decree the plaintiff and defendants Weisberg and Muscovitz have appealed.

That Alexander procured a warranty deed of this property and an assignment of the plaintiff's interest in the land contract through fraud and deceit is established by the evidence beyond any doubt. The important question is whether Weisberg was a good-faith mortgagee for value. The circuit judge filed an opinion as the basis of his decree in which he stated that the transaction between Alexander and Weisberg was under such circumstances as to "subject Harry Weisberg to considerable suspicion," but that "suspicion of fraud is not evidence of fraud," and therefore "this court fails to find evidence which convinces the court by a reasonable preponderance that Weisberg knew of the fraudulent dealings of Alexander and mortgaged this property when he had cognizance of the same."

The court was undoubtedly right in holding that

there was not sufficient evidence to justify a finding
that Weisberg had actual knowledge of any fraudulent
conduct on the part of Alexander in his dealings with
the plaintiff.   But whether Alexander's unusual con-
duct and the circumstances attending his offer to
mortgage the property were sufficient to put Weis-
berg upon inquiry as to his title is another question.
If the circumstances were sufficient to raise some
doubt in Weisberg's mind, and to cause him not to be
satisfied without an investigation, and he failed to
investigate, he must be charged with a knowledge of
the facts that he would have learned if he had done
so.    And it is immaterial that the facts sufficient to
put him on inquiry did not come from a documentary
source.    No matter from what source derived, if
they are such as to raise a doubt in the mind of a
man of ordinary prudence, they are sufficient to put
him on inquiry.    27 Cyc. p. 1201; *Wattles* v. *Slater,*
154 Mich. 666, and cases therein cited.

Before we point out what facts we think were suf-
ficient to put Weisberg on inquiry, let us say that,
however their effect may be regarded upon a man of
ordinary prudence, they did raise a serious doubt in
the mind of Weisberg, and of his attorney, as to Alex-
ander's title and his right to sell or mortgage the
property.    Mr. Goldfine, the attorney who repre-
sented Weisberg, testified that Alexander was in great
haste to have Weisberg accept the mortgage.    It will
be remembered that Alexander secured the deed and
assignment of the contract from the plaintiff about
noon of May 13th.    At 4 o'clock of the same day
he offered to make the mortgage to Weisberg and in-
sisted on closing the matter that night.    Mr. Goldfine
testified that Alexander tried to rush him, that he
was afraid of Alexander and "didn't want to take
any chances."    So he required Alexander to go before
a notary and make oath that he was the legal owner

of the premises, that his title was "full and clear" and that he had "power to dispose of the same." Still afraid of Alexander, Goldfine insisted that he sign a conditional sales agreement. He testified:

"Alexander tried to rush me and I decided that the best thing for me to do for Weisberg's protection was to cover the diamond with some other security because we hadn't taken over the deal. So I covered it with this conditional sale which was a much better form of security. I recorded it. I used the conditional sale because I knew I could go out and get him criminally."

The further fact that Alexander was offering them a land contract worth every cent of $4,200 to secure a debt of $800, and that they would not accept it until they had tied him up so that they could reach him criminally, shows that Goldfine and Weisberg were not satisfied with his assurance of ownership and his right to mortgage. And why should they have been? Alexander was practically a stranger. The only evidence of his title was an unrecorded deed which he had procured a few hours before. He was in great haste to get the matter over. He insisted on putting it through before they had time to secure his wife's signature to the deed. He was reluctant to make oath that he was the legal owner of the property and had the right to mortgage it. Goldfine testified that "at first he reneged, and then I told him it wouldn't go through that night." The effect of these facts upon the minds of Goldfine and Weisberg was to create a doubt as to Alexander's title and his right to mortgage. He was in haste and gave them no time to investigate. And instead of investigating, they took additional security which they considered rendered them safe if the mortgage failed. The plaintiff lived in Detroit. All of the parties lived there. It would have been an easy matter for them to have made inquiries and if they had done so they would have learned that Alexander was not the legal owner of the prop-

erty and had no authority to mortgage it.    Under the circumstances above related, it was the duty of Weisberg to make inquiry, and, having failed to do so, he must be charged with knowledge of the facts relative to Alexander's fraudulent dealings with the plaintiff.    Our conclusion is that Weisberg was not an innocent mortgagee.

Five or six days after the plaintiff had commenced this suit and filed notice of *lis pendens* Weisberg sold the property to defendant Muscovitz at a suspiciously low price.    The *lis pendens* was notice to Muscovitz of what was involved in the suit; and there was involved in the suit Alexander's fraud and the question whether Weisberg was a good-faith mortgagee.    With such notice, Muscovitz was not an innocent purchaser for value, and acquired no title to the property.    The warranty deeds from plaintiff to Alexander, from Alexander to Weisberg, and from Weisberg to Muscovitz, together with the assignments of the contract to the same parties, should be canceled and the property restored to the plaintiff.

A decree in accordance with this opinion will be entered in this court.    The plaintiff will have costs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.